IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **J&J SPORTS PRODUCTIONS, INC.,** § <br> as Broadcast Licensee of the October 6, 2007 § <br> "Will to Win": Pacquiao/Barrera Event, § <br> § <br> Plaintiff, § <br> § <br> v. § <br> § <br> Q CAFÉ, INC., Individually and d/b/a § <br> Q CAFÉ & BILLIARDS GAME ROOM, § <br> § <br> Q CAFÉ & BILLIARD, INC., Individually § <br> and d/b/a Q CAFÉ & BILLIARDS GAME § <br> ROOM, § <br> § <br> MIJA KIM a/k/a MIJA YI, § <br> Individually and d/b/a Q CAFÉ & § <br> BILLIARDS GAME ROOM, § <br> § <br> NAM SUN PEAK, a/k/a NAM SUN PAEK § <br> a/k/a NAM S. PAEK a/k/a NAMSUN § <br> PAEK a/k/a NAN SUM PAEK, § <br> Individually and d/b/a Q CAFÉ & § <br> BILLIARDS GAME ROOM, § <br> § <br> Defendants. § | | Civil Action No. 3:10-CV-02006-L |

**MEMORANDUM OPINION AND ORDER**

Before the court is Plaintiff's Motion for Summary Judgment, filed July 20, 2011. Defendants Q Café, Inc., individually and d/b/a Q Café & Billiards Game Room ("Q Café, Inc."), Q Café & Billiard, Inc., individually and d/b/a Q Café & Billiards Game Room ("Q Café & Billiards, Inc."), and Mija Kim a/k/a Mija Yi, individually and d/b/a Q Café & Billiards Game Room ("Mija Kim") (collectively "Defendants") did not file a response to Plaintiff's motion. After careful

**Memorandum Opinion and Order - Page 1**

consideration of the motion, summary judgment evidence, and applicable law, the court, for the reasons stated herein, **grants** Plaintiff's Motion for Summary Judgment.

I.     **Factual and Procedural Background**

Plaintiff J&J Sports Productions, Inc. ("J&J Sports" or "Plaintiff") markets and licenses commercial exhibitions of pay-per-view prizefight events. On September 18, 2007, Plaintiff entered into a licensing agreement with Golden Boy Promotions, Inc. and Top Rank, Inc. (collectively referred to as "Promoter") granting J&J Sports an exclusive license to exhibit Promoter's live telecast of the October 6, 2007 "Will to Win": Manny Pacquiao v. Marco Antonio Barrera WBC Super Featherweight Championship Fight Program and selected undercard bouts (the "Event"). As a result of the licensing agreement between the Promoter and J&J Sports, the event was legally available to commercial establishments, including bars, clubs, lounges and restaurants, in Texas only through an agreement with J&J Sports.

In an effort to prevent unauthorized interception or receipt of the event, the interstate satellite transmission of the Event was electronically coded or scrambled; broadcast of the Event was not available to or intended for the general public. Once a commercial establishment was authorized by Plaintiff to receive the Event, the establishment was provided with electronic decoding equipment and the satellite coordinates necessary to receive the signal; alternatively, the satellite provider of the sublicensee would be notified to unscramble the reception. The method of receiving the Event depended on the sublicensee's equipment and provider. Domestic commercial establishments interested in broadcasting the event were required to contract with Plaintiff and pay a commercial sublicense fee to broadcast the Event; the sublicense fee was based on the capacity of the establishment and varied depending on the event. For the Pacquiao/Barrera Event, a commercial

establishment with a maximum fire code occupancy of 150 persons would be required to pay $1,600 as the sublicensee fee.

On the date of the Event, without authorization, Defendants intercepted and received or assisted in the interception and receipt of the transmission of the Event, and broadcast or assisted in the broadcast of the Event to the patrons of Q Café & Billiards Game Room ("Defendant's Establishment" or "Establishment"). Plaintiff's Auditor entered the establishment on the night of the Event and observed the event being telecast to at least one hundred and fifty-three (153) patrons at Defendant's Establishment on eleven (11) televisions, including four (4) big screen televisions.

On October 5, 2010, Plaintiff filed this action against Defendant for violation of the Communications Act of 1934 ("Act"). 47 U.S.C. §§ 553, 605 (2011). Plaintiff seeks $60,000 in statutory and additional damages, plus attorney's fees, postjudgment interest, and costs. Additionally, Plaintiff seeks a permanent injunction that enjoins Defendants, jointly and severally, from ever intercepting or exhibiting an unauthorized program in violation of the Federal Communications Act. Defendant Q Café, Inc. filed its Answer to Plaintiff's Complaint on November 1, 2011, denying liability under the Act. Defendants Q Café & Billiard, Inc. and Mija Kim filed an Answer to Plaintiff's Complaint on November 5, 2010, denying liability under the Act.

On July 20, 2011, Plaintiff moved for summary judgment on the grounds that Defendants violated section 605 of the Act. In support of its motion, Plaintiff submitted: Affidavit of Thomas P. Riley, a true and correct copy of the License Agreement, a true and correct copy of the Affidavit of Desiree Nash, Affidavit of Andrew R. Korn, Q Café, Inc.'s Response to Plaintiff's First Requests for Admissions to Defendant Q Café, Inc., Q Café & Billiard, Inc.'s Response to Plaintiff's First Requests for Admission to Defendant Q Café & Billiard, Inc., and Defendant Mija Kim a/k/a Mija

Yi's Response to Plaintiff's First Requests for Admission to Defendant Mija Kim a/k/a Mija Yi.

Resolution of this issue will dispose of all issues and parties in this case. As previously noted, Defendants did not file a response to Plaintiff's Motion for Summary Judgment.

## II. Standard

Summary judgment shall be granted when the record shows that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all facts and inferences in the light most favorable to the nonmoving party and resolve all disputed facts in favor of the nonmoving party. *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005). Further, a court "may not make credibility determinations or weigh the evidence" in ruling on motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254-55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine dispute of material fact. *Matsushita*, 475 U.S. at 586. Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *See Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir.), *cert.*

*denied*, 513 U.S. 871 (1994). The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Ragas*, 136 F.3d at 458. Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.*; *see also Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir.), *cert. denied*, 506 U.S. 832 (1992). "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputed fact issues which are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id.* If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23.

Defendants Q Café, Inc., individually and d/b/a Q Café & Billiards Game Room, Q Café & Billiard, Inc., individually and d/b/a Q Café & Billiards Game Room, and Mija Kim a/k/a Mija Yi, individually and d/b/a Q Café & Billiards Game Room filed no response to the summary judgment motion. This failure, of course, does not permit the court to enter a "default" summary judgment. *Eversley v. Mbank Dallas*, 843 F.2d 172, 174 (5th Cir. 1988). Normally, "[a] summary judgment nonmovant who does not respond to the motion is relegated to [its] unsworn pleadings, which do not constitute summary judgment evidence." *Bookman v. Schubzda*, 945 F. Supp. 999, 1002 (N.D. Tex. 1996) (citing *Solo Serve Corp. v. Westowne Assocs.*, 929 F.2d 160, 165 (5th Cir. 1991)). In this case, there is testimony presented by way of admissions contained within Defendants Q Café & Billiard, Inc. and Mija Kim's Answer and Defendant Q Café, Inc.'s Answer that the court must consider because it is part of the record.

**Memorandum Opinion and Order - Page 5**

III.   **Analysis**

Plaintiff has elected to proceed pursuant to 47 U.S.C. § 605 because the Event originated via satellite. *See* Aff. of Thomas P. Riley 2-3; Closed Circuit Television License Agreement 3-7; 47 U.S.C. § 605 (2011); *Kingvision Pay-Per-View v. Marinelarena*, No. EP-01-CA-0155-EP 2002, U.S. Dist. LEXIS 25894 (W.D. Tex. Mar. 28, 2002) (citing *Prostar v. Massachi*, 239 F.3d 669, 673 (5th Cir. 2001)).

A.   **Liability**

In order to establish liability, Plaintiff must show that (a) the Event was shown in Defendants' Establishment and (b) that such exhibition of the Event was not authorized by J&J Sports. *See King Vision Pay-Per-View, Ltd. v. Lake Alice Bar*, 168 F.3d 347, 349 (9th Cir. 1999) (holding that the district court judge's finding, in his findings of fact, that the bar had shown a preliminary bout was "the only finding that matters"); *J&J Sports Prods. v. Valdez*, No. L-08-42, 2008 U.S. Dist. LEXIS 98603, at *3-4 (S.D. Tex. Dec. 4, 2008) (citing *King Vision*, 168 F.3d at 349). J&J Sports relies on the following uncontroverted summary judgment evidence: Affidavit of Thomas P. Riley, Affidavit of Desiree Nash ("Plaintiff's Auditor"), and License Agreement between Plaintiff and the Promoter of the Event.

J&J attaches the Affidavit of Thomas P. Riley, an attorney for J&J Sports; the affidavit establishes that the Event was legally available to commercial establishments in Texas only through an agreement with Plaintiff. The affidavit establishes that, on October 6, 2007, without authorization, Defendants intercepted and received or assisted in the interception and receipt of the transmission of the Event and broadcast or assisted in the broadcast of the Event to the patrons of Defendant's Establishment. The Affidavit of Desiree Nash states that on the night of the Event,

Plaintiff's Auditor observed the Event (specifically the ninth round of the Pacquiao and Barrera boxing match) being exhibited on eleven (11) televisions to patrons of Defendant's Establishment. Furthermore, Defendants admit that the Event was shown in Defendant's Establishment on October 6, 2007. Q Café, Inc.'s Resp. to Pl.'s First Req. for Admis. to Def. Q Café, Inc. 4, # 10; Def. Mija Kim a/k/a Mija Yi's Resp. to Pl.'s First Req. for Admis. to Def. Mija Kim a/k/a Mija Yi 4, #10; Q Café & Billiard, Inc.'s Resp. to Pl.'s First Req. for Admis. to Def. Q Café & Billiard, Inc. 4, #10. The license agreement grants Plaintiff the exclusive right to license the event commercial establishments in the United States, including Texas.

    **1.**  **Defendant Q Café and Billiard, Inc.**

Defendant Q Café and Billiard, Inc. admits that it (a) had a right and ability to supervise the activities of the Establishment and (b) had an obvious and direct financial interest in the activities of the Establishment. Defs. Q Café & Billiard, Inc. and Mija Kim's Ans. to Compl. 2, #4. Defendant also admits "the Event was exhibited or broadcast at the Establishment for [its] financial gain." Q Café & Billiard, Inc.'s Resp. to Pl.'s First Reqs. for Admis. to Def. Q Café & Billiard, Inc. 7, #33. In order to establish vicarious liability, Plaintiff must show that the defendant (a) had a right and ability to supervise the infringing activities, and (b) an obvious and direct financial interest in the exploitation. *KingVision Pay-Per-View, Ltd. v. Olivares*, No. 02 Civ. 6588 (JES) (RLE), 2004 U.S. Dist. Lexis 6261, at *13 (S.D.N.Y. Apr. 5, 2004) (citing *Softel, Inc. v. Dragon Med. & Sci. Commc'ns*, 118 F.3d 955, 971 (2d Cir. 1997) ("To establish vicarious liability, Plaintiff only needs to show that the individual defendant, had a 'right and ability to supervise' the infringing activities and 'an obvious and direct financial interest in the exploitation . . .'"); *see Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 545 U.S. 913, 931 n.9 (2005); *Garden City Boxing Club, Inc. v.*

*Morales*, No. 05-CV-0064 (FB) (KAM), 2005 U.S. Dist. LEXIS 22989, at *26-27 (E.D.N.Y. Aug. 18, 2005). Defendant Q Café has admitted both elements necessary for liability: (a) right and ability to supervise the infringing activities and an obvious and (b) direct financial interest in the exploitation. Therefore, Defendant Q Café is liable.

### 2. Defendants Q Café, Inc. and Mija Kim

Defendants Q Café, Inc. and Mija Kim admit that they owned an alcohol license for the Establishment on the date of the Event. *See* Exhibit "C" at 5; Exhibit E at 6. As owners of the alcohol license for the Establishment, Defendants Q Café, Inc. and Mija Kim are responsible for the exhibition of the Event in the Establishment. *See Joe Hand Promotions, Inc. v. Roberson Mgmt.*, No. H-05-3797, 2006 U.S. Dist. LEXIS 56237, at *2-4 (S.D. Tex. 2006) (Ellison, J.) (holding that Defendant was responsible for all portions of the bar, including the televisions, because he owned an alcohol license for the bar); *see also J&J Sports Productions, Inc. v. Garcia*, No. H-08-1675, 2009 U.S. Dist. LEXIS 72233, at *9-10 (S.D. Tex. Aug. 14, 2009) (citing *Joe Hand*, 2006 U.S. Dist. LEXIS 56237, at *1). Therefore, Defendants Q Café, Inc. and Mija Kim are liable. As Defendant Mija Kim is liable due to her ownership of the Establishment's alcohol license, the court will not analyze Defendant Mija Kim's liability under a theory of vicarious liability for an individual defendant.

### 3. Conclusion as to Liability

For the reasons herein stated, no disputed issues of material fact exist with regard to Plaintiff's claims, and Plaintiff is entitled to judgment as a matter of law. Accordingly, the court **grants** J&J Sports' Motion for Summary Judgment.

**Memorandum Opinion and Order - Page 8**

**B.     Damages**

In Plaintiff's Motion for Summary Judgment, Plaintiff asks the court to award statutory damages pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II) from Defendants, jointly and severally, in the amount of $10,000, and additional damages pursuant to 47 U.S.C. § 605(e)(3)(C)(ii) from Defendants, jointly and severally, in the amount of $50,000. Pl.'s Mot. for Summ. J. 7, ¶ 3. Section 605 of the Act provides that an aggrieved party may not recover an award of statutory damages of more than $10,000 (for each violation of subsection (a) of section 605 of the Act). 47 U.S.C. § 605(e)(3)(C)(i)(II) (2011). The amount of statutory damages requested by Plaintiff falls within the amount allowed by statute, and the court finds the amount of $10,000 in statutory damages reasonable.

With regard to additional damages under subsection (C)(ii) of the Act, the conduct alleged in the Complaint amounts to "willful" conduct, thereby allowing the plaintiff to recover additional damages under 47 U.S.C. § 605(e)(3)(C)(II). *See Time Warner Cable v. Googies Luncheonette, Inc.*, 77 F. Supp. 2d 485, 490 (S.D.N.Y. 1999) ("There can be no doubt that the violations were willful and committed for purposes of commercial advantage and private gain. Signals do not descramble spontaneously, nor do television sets connect themselves to cable distribution systems."). The court in its discretion may increase the amount of damages by an amount of not more than $100,000 for each violation of subsection (a). 47 U.S.C. § 605(e)(3)(C)(i)(II) (2011). To deter pirating of cable and satellite broadcasts, court have awarded in damages multipliers of three to eight (3 to 8) times the statutory damages as additional damages. *See KingVision Pay-Per-View, Ltd. v. Scott E.'s Pub, Inc.*, 146 F. Supp. 2d 955, 960 (E.D. Wis. 2001) (discussing cases applying multipliers of three to eight times the statutory damages as additional damages in order to deter future violations); *see also*

**Memorandum Opinion and Order - Page 9**

*Cablevision Systems Corp. v. Maxie's N. Shore Deli Corp.*, No. CV-88-2834 (ASC), 1991 U.S. Dist. LEXIS 4874, at *3, 1991 WL 58350, at *2 (E.D.N.Y. 1991) (awarding additional damages for willful violation under section 605 in the amount of five times the initial statutory damages award). The multiplier of five (5) times in this case is reasonable, considering the location of the broadcast in an urban area and the importance of deterring future violations. *See Joe Hand Promotions, Inc. v. Villalobos*, No. 1:09cv0297 OWW DLB, 2009 U.S. Dist. LEXIS 85183, at *6 (E.D. Cal. Sept. 16, 2009) ("Given the size of the establishment at issue, its location both in a relatively urban city and adjacent to an even larger urban city and the fact that the Program was shown on a large projection screen, the Court finds that the violations likely had more than a minimal impact."). Plaintiff is entitled to a statutory damages pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II) from Defendants, jointly and severally, in the amount of $10,000 and additional damages pursuant to 47 U.S.C. 605(e)(3)(C)(ii) from Defendants, jointly and severally, in the amount of $50,000. Plaintiff is entitled to damages in the amount of **$60,000**.

### C. Permanent Injunction

Plaintiff further requests the court permanently enjoin Defendants, jointly and severally, from ever intercepting or exhibiting an unauthorized program in violation of the Act. The pertinent section of the Act permits courts to grant a final injunction "on such terms as it may deem reasonable to prevent or restrain violations" of the Act. 47 U.S.C. § 605(e)(3)(B)(i) (2011). After a careful review of the evidence and authority, the court determines that permanent injunctive relief is appropriate. Accordingly, pursuant to Rule 65 of the Federal Rules of Civil Procedure, Defendants, Defendants' officers, agents, servants, employees, and attorneys and upon those persons

in active concert or participation with Defendants are forever enjoined from ever intercepting or exhibiting an unauthorized program in violation of the Act.

    **D.**    **Attorney's Fees**

Plaintiff J&J Sports requests attorney's fees from Defendant in the amount of one-third of recovery, or, alternatively, the hourly time (for prosecution of this case through summary judgment) presented in the Affidavit of Andrew R. Korn in the amount of $2,500. Aff. of Andrew R. Korn 5, ¶ 2. The court believes that the hourly rate is the appropriate method for determining an award of attorney's fees and therefore must determine whether the requested amount is reasonable. The record reflects that Plaintiff's counsel, Andrew R. Korn, has been licensed by the State of Texas since 1989. His practice primarily consists of handling cases involving commercial and civil litigation. His hourly rate is $250 per hour. The court finds that this hourly rate is within the range of the usual and customary rate charged by attorneys in the Dallas legal community with similar ability, competence, experience, and skill as that of Plaintiff's counsel for the services performed in cases of this nature. Accordingly, the court finds that the hourly rate of $250 per hour is reasonable.

Although Plaintiff has produced no time records or evidence setting forth the number of hours expended, he estimates that his counsel has spent a minimum of ten hours on this case through the preparation of Plaintiff's Motion for Summary Judgment. The court finds that Plaintiff's counsel reasonably expended at a minimum ten hours to prosecute this case successfully. The Act requires that the court "shall direct the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails." 47 U.S.C. § 605(e)(3)(B)(iii) (2011). Accordingly, the court determines that Plaintiff is entitled to an award of attorney's fees in the amount of $2,500.

**Memorandum Opinion and Order - Page 11**

## IV. Conclusion

For the reasons herein stated, the court will issue judgment against Defendants Q Café, Inc., Q Café & Billiards, Inc., and Mija Kim by separate document pursuant to Rule 58 of the Federal Rules of Civil Procedure.

**It is so ordered** this 25th day of January, 2012.

                                          Sam A. Lindsay
                                          United States District Judge